J-A20041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TENTH PRESBYTERIAN CHURCH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PHILIP SNYDER | : | |
| | : | |
| Appellant | : | No. 2522 EDA 2021 |

Appeal from the Order Entered November 10, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  190703016

BEFORE:  BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:　　　　　**FILED SEPTEMBER 08, 2022**

In this case that returns to us after remand by this Court, Philip Snyder (Snyder) appeals from the order entered in the Court of Common Pleas of Philadelphia County (trial court) granting the emergency motion for injunctive relief filed by Tenth Presbyterian Church (the Church) and enjoining Snyder from appearing within 1,000 feet of all Church-owned properties.  Snyder challenges the trial court's distance requirement as overly broad in contravention of this Court's remand directive.  We vacate the trial court's order as it pertains to the distance requirement only, affirm it in all other respects, and remand with instructions.

_____

[*] Retired Senior Judge assigned to the Superior Court.

**I.**

**A.**

The Church's primary facility is located at 1701 Delancey Street in Philadelphia, and it owns at least four additional properties on Spruce and S. 17th Streets (the Properties). We previously summarized the facts and procedural history of this case as follows:

Snyder moved to Philadelphia in 2008, after which he joined the Church, where he remained a member until the Church excommunicated Snyder in August 2016. Snyder thereafter began picketing at the Property regarding his excommunication and the conduct of certain current and prior Church officials. Snyder brought a defamation action against individual members of the Church, but ultimately, a jury tendered a verdict against Snyder.

After the verdict in the defamation action, Snyder protested outside of the Property every Sunday, before and after Church services. On July 24, 2019, the Church filed a Complaint for an injunction and an Emergency Motion for Injunctive Relief for a preliminary injunction. The Church sought to restrict Snyder from coming within 1,000 feet of all properties owned by the Church. Following oral argument, Snyder temporarily agreed to the Church's requested relief.

The trial court subsequently conducted a hearing on the Church's Motion for a preliminary injunction on January 30, 2020, and February 10, 2020. The trial court described the evidence presented at that hearing as follows:

Snyder testified that he began picketing outside of the Property after the March 22, 2019, jury verdict more frequently, with a sign that contained the phrase "naked beatings," "lying," and "rape," because he was displeased with the results of the case. Snyder further testified that he had protested while wearing a body camera and filmed congregants outside of the Property. Snyder testified that a trial court Order and subsequent Opinion in the defamation case misrepresented the truth. Douglas Baker (Baker), the Church's former administrator, testified that Snyder

frequently wore a visibly "concealed" firearm to church services when he was a member, and that he continued the practice while picketing with the sign and body camera. Baker testified that Snyder would verbally harass and yell at congregants outside the Property and then post body camera videos on a blog. Dr. William Goligher (Dr. Goligher), senior minister for the Church, testified that Snyder called him the "son of Satan" and a liar. Dr. Goligher testified that Snyder had verbally disparaged Snyder's own family for not committing to his protest and not being faithful, including referring to Snyder's wife as Job's wife. . . Dr. Goligher also testified that Snyder seemed preoccupied with safety and firearms, such that he would stand beside Dr. Goligher and point out individuals whom he thought were carrying firearms. Snyder's fixation on security and policing, even minor behaviors of the Church congregants, went on for years and included concerns about stolen phones, money, and immigrants. Snyder himself provided testimony that he has been the only individual telling the truth, that he has mailed 100 pages of material to 200 members of the Church, that he will never stop any of his behaviors until the Church's leadership has resigned in full, and that the Church was trying to poison him and hire a hitman to assassinate him. Susan Elzey (Ms. Elzey), a congregant, testified that outside of Church services on June 16, 2019, Snyder told her he was an instrument of God, similar to a prophet, and that only Snyder knows the true nature of Dr. Goligher's soul. Snyder went on to tell Ms. Elzey that Dr. Goligher was a son of Satan, and that any congregants who support Dr. Goligher are doing Satan's work. Snyder also told Ms. Elzey that he was unhappy with his wife, described her as Job's wife because she did not support him, and that his oath to remove Dr. Goligher from the Church was more important to him than his family.

By Order dated February 10, 2020, the trial court granted the Church's Motion and enjoined Snyder from appearing within **five thousand (5,000) feet** of the Church's properties located at (1) 1701 Delancey Street; (2) 1700 Spruce Street; (3) 315 S. 17th Street; (4) 1710 Spruce Street; and (5) 1716 Spruce Street.

(Trial Court Opinion, 8/21/20, at 1-5) (emphasis added). Thereafter, Snyder filed the instant timely Notice of Appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

(*Tenth Presbyterian Church v. Snyder*, 2021 WL 4839339, at \*1-2 (Pa. Super. filed October 18, 2021) (unpublished memorandum), *appeal denied*, 2022 WL 1314418 (Pa. 2022)) (brackets and some quotation marks omitted; emphasis in original).[1]

On appeal, we affirmed the trial court's order in part, reversed it in part, and remanded for further proceedings. We affirmed the trial court's determination as to the propriety of the preliminary injunction because "Snyder engaged in aggressive and agitated behavior that frightened and agitated Church members inside and outside of the Property." (*Id.* at \*8). However, we reversed the 5,000-foot distance requirement against Snyder as far exceeding the appropriate scope of relief. We remanded for the trial court "to fashion a limitation that achieves the specific needs of this case, *i.e.*, a distance that is sufficient to protect congregants' access to the Church and its services, yet continues to uphold Snyder's constitutional right to convey his dissatisfaction with the Church and its leadership." (*Id.*).

As to the Church's initial request for a uniform 1,000-foot prohibition on Snyder's protests at all of the Properties, we observed: "the Church **broadly** requested a one-thousand-foot prohibition on Snyder's protests. **The Complaint couches the requested relief in the broadest terms, but**

_____

[1] We note Snyder's testimony that although he is licensed to carry a firearm, he "never carried a weapon while [he] was protesting" and that his body camera footage supports this. (N.T. Hearing, 1/30/20, at 111).

**does not afford Snyder his constitutional right to protest the Church and its leadership**. Any preliminary injunction must be **narrowly tailored** to address the physical realities of **each Church property**, while balancing Snyder's federal and state right to free speech." (***Id.*** at * 7 n.3).[2]

### B.

On November 10, 2021, in accordance with this Court's remand directive, the trial court issued an order vacating the terms of its initial preliminary injunction and granting the Church's emergency motion for injunctive relief. The trial court decreased the distance requirement against Snyder from 5,000 to 1,000 feet, applicable to all Church-owned Properties and reads in relevant part:

> The Defendant Philip Snyder is ENJOINED from:
>
> 1. Distributing, picketing, leafleting, harassing, intimidating, placing in fear, threatening or otherwise communicating to Church members within one thousand (1,000) feet of the church located at 1701 Delancey Street, Philadelphia, PA 19103 on Sundays;
>
> 2. **Appearing** within one thousand (1,000) feet of all property **owned and/or occupied** by Tenth Presbyterian Church, **including but not necessarily**: 1700 Spruce Street, 1701 Delancey Street, 315 S. 17th Street; 1710 Spruce Street, and 1716 Spruce Street, Philadelphia, PA 19103.

(Order, 11/10/21) (emphases added).

---

[2] The Pennsylvania Supreme Court denied Snyder's petition for allowance of appeal on May 3, 2022.

The trial court acknowledged that "the content of Appellant's speech is protected as his subjective opinion," and determined that a 1,000-foot distance requirement "is narrowly tailored because Appellant is free to protest and distribute material more than 1000 feet from Appellee's properties." (Trial Court Opinion, 4/07/22, at 12-13). The court stated that it "couched [the injunction] in the narrowest terms possible because it is a restriction that will accomplish the pin-pointed objective of protecting Appellee's leadership and congregants while they worship," and noted the parties' litigious history and Snyder's "threat of potentially violent behavior" as reasons for its decision. (*Id.* at 13). Snyder timely appealed and he and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925.[3]

## II.

On appeal, Snyder contends the trial court's injunction was not narrowly tailored to address the harm alleged by the Church and that the 1,000-foot distance restriction applicable to all Church owned and/or occupied Properties must be vacated. Snyder maintains that the distance requirement prohibiting

_____

[3] "Appellate courts review a trial court order granting or denying a preliminary injunction for an abuse of discretion." *Marcellus Shale Coal. v. Dep't of Envtl. Prot. of Commonwealth*, 185 A.3d 985, 995 (Pa. 2018) (citation omitted). "Additionally, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Id.* (citation and emphasis omitted). "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decree." *Id.* (citation omitted).

him from appearing/protesting within the specified boundary deprives him of his right to engage in constitutionally protected expressive conduct without leaving open ample alternative methods of communication.[4]

**A.**

"The purposes of a preliminary injunction are to preserve the *status quo* and prevent imminent and irreparable harm which might occur before the merits of the case can be heard and determined." ***Constantakis v. Bryan Advisory Servs., LLC***, 275 A.3d 998, 1017 (Pa. Super. 2022) (citation omitted). A petitioner seeking a preliminary injunction must establish: "1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; 2) that greater injury would result from refusing an injunction than from granting it, and concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; 3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; 4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; 5) that the injunction it seeks is reasonably suited to abate the offending activity; and 6)

---

[4] Although Snyder raised multiple issues in his Rule 1925(b) Statement, he pursues only one issue on appeal. (***See*** Snyder's Brief, at 8 n.2).

that a preliminary injunction will not adversely affect the public interest." **Id.** at 1022 (citation omitted).

Additionally, "a preliminary injunction must be crafted so as to be **no broader than is necessary** for the petitioner's interim protection." **Santoro v. Morse**, 781 A.2d 1220, 1230 (Pa. Super. 2001) (citation omitted; emphasis added). The United States Supreme Court has directed that "an order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the **pin-pointed objective** permitted by constitutional mandate and the essential needs of the public order." **Turner Const. v. Plumbers Local 690**, 130 A.3d 47, 69 (Pa. Super. 2015) (citing **Carroll v. President and Commissioners of Princess Anne**, 393 U.S. 175, 183, (1968)). Therefore, an injunction that restrains free speech "must be tailored as precisely as possible to the exact needs of the case." **Id.**

**B.**

In this case, as framed by this Court previously, the trial court's objective was to craft a distance limitation "sufficient to protect congregants' access to the Church and its services, yet continues to uphold Snyder's constitutional right to convey his dissatisfaction with the Church and its leadership." (**Tenth Presbyterian Church**, **supra** at *8). In other words, the restraint that the trial court placed on Snyder's freedom of speech was required to be sufficiently lenient to permit him to effectively communicate his views on the Church with the public. We also specifically noted with regard to

the Church's request for a uniform 1,000-foot restriction at all Properties that this limitation is overly broad because it "**does not afford Snyder his constitutional right to protest the Church and its leadership**." (*Id.* at *7 n.3). We further directed that the trial court take into account the physical attributes of each Church Property in fashioning an appropriately narrowly-tailored distance restriction. (*See id*.).

The trial court, however, has issued an order on remand that does not indicate it weighed the physical characteristics of each Property and tailored the distance requirement accordingly, as it broadly enjoins Snyder from "appearing" within 1,000 feet of any Church "owned and/or occupied" Property. (Order, 11/10/21). Although the order prohibits active picketing only at the primary facility where congregants attend regular services on Sundays, Snyder's mere presence within 1,000 feet of any Church Property is a violation of the order.

Additionally, the injunction not only encompasses Property owned by the Church, but also includes any facilities the Church "occupies." While the order lists the street addresses of five such properties, the restriction is "not necessarily" limited to those specified. (*Id.*) This language is far from precise or narrow in scope, as it potentially captures unidentified locations that Snyder is unaware of.

Furthermore, the injunction disregards our prior finding that the Church's requested relief of a uniform 1,000-foot distance restriction is not

sufficiently narrowly tailored to balance the congregants' ability to access Church Properties with Snyder's right to free speech. (**See Tenth Presbyterian Church**, **supra**, at \*7 n.3) ("The Complaint couches the requested relief in the broadest terms, but does not afford Snyder his constitutional right to protest the Church and its leadership.").

Because the trial court's solution is not the narrowest means possible to achieve its goal, we are constrained to remand. We emphasize the court's obligation to craft an injunction using the "narrowest terms that will accomplish the pin-pointed objective" as framed by this Court and to tailor relief "as precisely as possible to the exact needs" of this case in a manner that imposes the least restraint on Snyder's free speech, taking into consideration the physical realities of each Church Property. **See Turner Const**., **supra** at 69.

On remand, as well as considering its finding that Snyder engaged in aggressive and agitated behavior that frightened and agitated Church members inside and outside of the Property, the trial court should, in setting the distance requirement set forth expressly why the particular distance restriction is the least necessary to protect Church property, permit the congregants' and Church employees access to the Church and to hold services without distraction, with the least possible impingement on Snyder's constitutional right to convey his dissatisfaction with the Church and its leadership on public streets and sidewalks.

- 10 -

Order vacated in part with respect to the 1,000-foot distance restriction only. Order affirmed in all other respects. Case remanded for further proceedings consistent with this Memorandum. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/8/2022*